(54 App. Div. 1.)

PEOPLE ex rel. TRACY v. WOODRUFF et al., Land-Office Com'rs.

(Supreme Court, Appellate Division, Third Department. September 11, 1900.)

1. CERTIORARI—PROCEEDINGS OF COMMISSIONERS OF LAND OFFICE—REVIEW.

     Under Public Lands Law (Laws 1894, c. 317, as amended by Laws 1895, c. 208) § 70, providing that "the commissioners of the land office may grant in perpetuity or otherwise, to the owners of the lands adjacent to the lands under water specified in this section, to promote the commerce of this state or for the purpose of beneficial enjoyment thereof by such owners, or for agricultural purposes, so much of said lands under water as they deem necessary for that purpose," the commissioners have an absolute discretion to make or not to make grants of land under water to the proprietors of the adjacent lands; and a refusal to make a grant cannot be reviewed by writ of certiorari, the determination in such instance not being a judicial one.

2. LAND UNDER NAVIGABLE WATERS—OWNERSHIP.

     Ownership of adjacent upland on navigable water gives the owner thereof no title to the land under water in front of his premises, and he cannot demand or compel a grant to him from the state of such land.

Certiorari by the people, on the relation of Jeremiah Evarts Tracy, to review the determination of Timothy L. Woodruff and others, commissioners of the land office of the state of New York. Writ dismissed.

In 1897 the relator, who was the owner of certain upland on the north shore of Staten Island, extending down to low-water mark of the New York Bay, applied to the commissioners of the land office for a grant of land under water of the said bay in front of his upland. This application was opposed by the Staten Island Rapid-Transit Railroad Company on the ground that a grant of the land applied for had previously been made by the state, through which grant the remonstrant claimed title. In the year 1815 the upland now owned by the relator was a part of the upland extending down to low-water mark, owned by Daniel D. Tompkins, who in that year made an application to the commissioners of the land office for a grant of the land under water opposite his upland, not exceeding 500 feet from low-water mark. At about the same time Thomas Lawrence and John Van Beuren, then the owners of upland of about five chains in width adjoining the relator's upland on the west, made an application to the commissioners of the land office for a grant to them of the land under water in front of their upland. On April 1, 1816, Tompkins executed an instrument assigning to Lawrence and Van Beuren the right to receive the grant for the land under water for which he had applied, and consenting that such grant should be issued to the said Lawrence and Van Beuren. On April 3, 1816, the commissioners granted to Lawrence and Van Beuren the whole of the lands under water separately applied for by them and by Tompkins; and on April 9, 1816, Lawrence and Van Beuren conveyed to Tompkins so much of the land under water granted to them by the state as lay in front of the upland owned by Tompkins. The title of the relator to the upland extending down to low-water mark is deduced through Tompkins, and is unquestioned; and the title of the remonstrant to the land under water between low-water mark and a line 500 feet therefrom is also deduced through Tompkins, who acquired the same from Lawrence and Van Beuren in the manner stated, and is not questioned, except upon the ground that the grant by the state to Lawrence and Van Beuren is invalid. The letters patent to Lawrence and Van Beuren described the lands as "all that certain parcel of land under water in the town of Castletown, in our county of Richmond, adjoining lands belonging to Daniel D. Tompkins and the said Thomas Lawrence and John Van Beuren, bounded and described as follows," etc. The conveyance of the land under water applied for by the relator was made in 1885 to the Staten Island Rapid-Transit Railroad Company, who in 1890 and 1891, at a large expense, constructed

66 N.Y.S.—14

two piers thereon. The commissioners of the land office denied the relator's application for a grant, and this proceeding is instituted to review their action.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Treadwell Cleveland, for relator.

John C. Davies, Atty. Gen. (Lester W. Clark, of counsel), for respondents.

EDWARDS, J.   The power of the court to review the decision of the commissioners of the land office denying the relator's application for a grant is challenged by the respondents' counsel, and this presents the first question for our consideration. Early in the history of the state the power which was vested in the legislature to grant lands under navigable waters within the limits of the state, to the title to which the state had succeeded, was confided to a board of commissioners of the land office. Laws 1786, c. 67 (Laws 1801, c. 69). It was said by the chancellor in Lansing v. Smith, 4 Wend. 10:

"The object of the act was to authorize the commissioners of the land office, in their discretion, to make such grants in certain cases for the promotion of commerce. It was to prevent the necessity of frequent applications to the legislature for that purpose."

The powers of the commissioners in respect to grants of land under water, as conferred by section 70 of the public lands law (Laws 1894, c. 317, as amended by Laws 1895, c. 208), are as follows:

"The commissioners of the land office may grant in perpetuity or otherwise, to the owners of the lands adjacent to the lands under water specified in this section, to promote the commerce of this state or for the purpose of beneficial enjoyment thereof by such owners, or for agricultural purposes, so much of said lands under water as they deem necessary for that purpose. No such grant shall be made to any person other than the proprietor of the adjacent lands, and any such grant made to any other person shall be void."

From the character of their duty, and the language of the statute conferring the power, there can be no doubt that the commissioners have an absolute discretion to make or not to make grants of land under water to the proprietor of the adjacent lands. The statute constitutes them the agents of the state to convey lands under navigable waters, and the only limitations on their powers are those contained in the statute. Although they are not a judicial body, it sometimes becomes necessary for them, in the performance of their duties, to exercise judicial functions, and their action is then subject to review. Such was the case in People v. Jones, 112 N. Y. 597, 20 N. E. 577, where the question before the commissioners was the ownership of the adjacent uplands, the title to which was claimed by both the applicant and the relator, and the commissioners, after hearing the evidence of the parties on that question, erroneously determined that the applicant was the owner, and, in violation of the statute, made the grant to him, instead of the relator, who was the legal proprietor. The ground on which the action of the commissioners was there reviewable is that, in the determination of the purely legal question as to who was the riparian owner, the commissioners were exercising judicial functions. But the court, recognizing the discretionary power of the commissioners, there said:

"It is not claimed by the relator that the commissioners can be controlled in the exercise of their discretion upon the question whether a grant shall be made or not; but it is insisted if they do make such grant, it shall issue to the owner of the adjacent uplands, and not to a stranger."

In People v. Saxton, 15 App. Div. 263, 44 N. Y. Supp. 211 (Third department), the court, after considering a question of ownership which was before the commissioners, said:

"It is further claimed that no sufficient necessity is apparent for granting the applications, or if at all, not to the extent claimed, and that the rights of the public will be improperly interfered with."

After quoting section 70 of the public lands law, Mr. Justice Merwin, writing the opinion, says:

"The commissioners are evidently clothed with a discretion in the matter. In People v. Jones, 112 N. Y. 597, 20 N. E. 577, it was assumed that this discretion as to whether a grant shall be made or not, assuming they had a right to act and dealt with the proper party, may not be controlled. The determination of inferior jurisdictions in matters within that jurisdiction which are confided to their discretion are not reviewable. * * * The proofs before the commissioners presented the situation, and their judgment as to the necessity or the extent of the grants should not be interfered with."

The writ lies to review only the judicial action of inferior tribunals and officers, and the fact that a public agent exercises judgment and discretion in the performance of his duties does not make his action judicial. People v. Board of Com'rs, 97 N. Y. 37; People ex rel. Trustees of Village of Jamaica v. Board of Sup'rs, 131 N. Y. 468, 30 N. E. 488; People ex rel. O'Connor v. Board of Sup'rs, 153 N. Y. 370, 47 N. E. 790. Here there was no judicial determination of any question by the commissioners. The relator's ownership of the upland was conceded, and, although he contended before the commissioners that the grant made in 1816 by the state to Lawrence and Van Beuren is void on its face, the commissioners did not decide the question of its validity. They merely declined, in the exercise of the discretion confided to them, in view of the situation presented, to grant the application, and whatever rights the relator had as riparian owner were unaffected by their decision. Unquestionably, the discretion of the commissioners was affected by the equitable considerations that more than 80 years previously the state, at the request of Tompkins, who was then the owner of the upland, granted the land under water applied for to Lawrence and Van Beuren, who immediately thereafter granted it to Tompkins, through whom title was acquired by the remonstrant, who in good faith has expended large sums thereon; but, for the reasons stated, I am of opinion that their judgment cannot, on this ground, be interfered with. The relator's ownership of the adjacent upland gave him no title to the land under water in front of his premises (People v. New York & S. I. Ferry Co., 68 N. Y. 76); and, whatever may be his right of access to the water, and other rights as riparian owner, he cannot demand or compel a grant to him from the state of the land under water. He has not legal right to such a grant, the giving or withholding of which rests, I think, entirely in the discretion of the commissioners of the land office. The writ should be dismissed, with costs.

Writ of certiorari dismissed, with $50 costs and disbursements. All concur, except SMITH, J., not voting.