PEOPLE OF THE STATE OF NEW YORK *v.* WILLIAM H. PAASCHEN.

(County Court, Rensselaer County, December, 1918.)

Disorderly persons — who are — when wife may cause arrest of husband upon charge of being a disorderly person — appeal — what not a bar to conviction — when judgment of conviction affirmed — husband and wife — Code of Criminal Procedure, § 899(1).

Where a wife without means to support herself is abandoned by her husband and is liable to become a charge upon the public, and she neither wishes to sue for a separation nor a

27

divorce, she may cause his arrest upon a charge of being a disorderly person under section 899(1) of the Code of Criminal Procedure.

Where upon appeal from a judgment convicting defendant of being a disorderly person within the meaning of section 899(1) of the Code of Criminal Procedure, the record shows that defendant's offers to his wife of a home in a hotel in the city where they had resided ever since their marriage were made in bad faith and with fraudulent intent to evade the provisions of said statute, and it appears that the place offered consisted of two rooms which were not in keeping with the station and standing in life of the husband and wife; were on the fourth floor in the back of the hotel, where she would be cut off from the comforts and conveniences such as she had been accustomed to, and the hotel proprietor testifies that the rooms were not desirable, the judgment of conviction will be affirmed.

The wife was not compelled to accept defendant's offers of a home made upon the hearing of the proceeding, and in the circumstances they were not a bar to his conviction.

The law never guards " bad faith " to such an extent as to permit a husband to compel his wife to go where he would " get her " in order to accomplish some ulterior purpose of his own.

APPEAL from a judgment of conviction in the Police Court of the city of Troy, N. Y.

Frederick C. Filley, assistant district attorney, for people.

Thomas F. Powers, for defendant.

RUSSELL, J. This is an appeal from a judgment of conviction of the Police Court of the city of Troy, N. Y., of the defendant of being a disorderly person under subdivision 1 of section 899 of the Code of Criminal Procedure.

Subdivision 1 of section 899 reads as follows:

" The following are disorderly persons:

" 1. Persons who actually abandon their wives or children, without adequate support, or leave them in

danger of becoming a burden upon the public, or who neglect to provide for them according to their means.''

It is evident that this section was designed to prevent persons from becoming a charge upon the public purse.

'' It seems to be the settled law that in order to justify a judgment of conviction thereunder there must be proof sufficient to show that the family of the defendant is liable to become a burden upon the public.'' *People* v. *Smith,* 139 App. Div. 361–363.

It is also the settled law that in order to warrant a conviction under this section there must be an abandonment on the part of the husband and such an abandonment that would leave the wife or children a charge upon the public or likely to become a charge upon the public. *People ex rel. Demos* v. *Demos,* 115 App. Div. 410–412.

In the above cases cited as well as in many other cases bearing upon the same subject there can be found elements of good faith upon the part of the husband, but in this case at bar from the evidence nothing but bad faith can be construed.

The evidence shows that the complainant and defendant resided at 2340 Fifteenth street in the city of Troy, N. Y., for ten years, until the 2d day of December, 1918, approximately the entire period of their married life.

The following evidence then appears: '' Q. Was there anything said by Mr. Paaschen about going to the Fifth Avenue Hotel on Saturday? A. He said, ' Now I'll get you, I'll engage rooms at the Fifth Avenue Hotel.' And I said: ' I will not go to the Fifth Avenue Hotel.' ''

After this conversation the last time the complainant saw the defendant was on a Sunday morning, December first. On Monday afternoon, December second, a

moving van came to the house where the complainant lived. A city marshal about the same time came to the house, but was not allowed in. The marshal then telephoned for the defendant who came to the house, at which time the defendant broke in the parlor door and removed furniture from the house. For what purpose the city marshal was sent does not appear except the defendant said he had an officer with him. On December second at the time the furniture was removed the defendant also removed the food from the house.

Evidence of bad faith on the part of the defendant, it seems to me, is clearly shown by the following evidence: " Q. When you said to him that you wouldn't go to the Fifth Avenue Hotel, did you tell him the reason why you wouldn't go? A. I did. I told him I wouldn't go to any public hotel with him, I would stay at my home where I was protected. He said I would go there. I said I wouldn't go anywhere where you can frame up anything on me. He said: ' I'll show you.' Q. Had you and Mr. Paaschen had discussions when there was some talk about framing you up? A. Yes, sir. Q. Tell what it was. A. Because previous to this time he said to me: ' Have you started proceedings for a divorce against me?' I said: 'Certainly not, and I will never give you a divorce.' He said: ' I will give you grounds for a divorce, I will give you the evidence.' I said: ' Thank you, I don't care for it, because I will never give you a divorce.' Q. What else did he say? A. He said he would give me evidence for divorce. I said I didn't care for it. He said: ' I will get one from you.' I said: ' How, I have been a faithful wife to you for over ten years. I have never done anything wrong. How can you get a divorce from me?' He said: ' I'll show you, I'll get you. Money can get evidence anytime.' Q. What

was said that morning when he ordered you to go to the Fifth Avenue Hotel? What did he say to you that he would get you now? A. He said: ' I will get you now, I have engaged rooms at the Fifth Avenue Hotel to-day and I will get you now.' I said: ' I will not go to the Fifth Avenue Hotel.' He said: ' You will.' I said: ' I will not go to any public hotel with you. I have a room here and I am safe and I am not going any place where you can frame up anything on me.' ''

This evidence bristles with bad faith. The defendant's offers were made in bad faith and evidently with a fraudulent intent to evade the provisions of the statute. *People* v. *Frederick,* 9 N. Y. Crim. Rep. 214; affd., 143 N. Y. 667.

In *People* v. *Frederick* the complainant was offered a home, then refused admittance. It seems to me that there is little difference in the degree of bad faith between refusing admittance after an offer and compelling a person to live in a place under fear and intimidation. All the circumstances in the case at bar evince bad faith, and being such the defendant at least should have respected the wishes of the complainant to some degree. *Lutes* v. *Shelly,* 40 Hun, 197–202.

Due to the circumstances she was entitled to an examination of the home he was willing to offer.

This statute is a summary proceeding. Its purpose is not only to relieve the public from unjust expense but to give immediate relief to one in need and immediate protection to the public purse. He abandoned her, because he did not offer her a home under such circumstances as she was bound to accept as his wife within the meaning of the law. The place offered consisted of two rooms which were not in keeping with their station and standing in life. They were on the fourth floor in the back of the hotel called the annex,

where she was cut off from the comforts and con-
veniences such as she had been accustomed to.  They
were not desirable rooms, as appears by the evidence
of the hotel proprietor.

For ten years the complainant had been living in
a flat of eight rooms and it appears that the defendant
is worth $75,000 and has an income of $5,000 a year.

Had the defendant offered the complainant suitable
rooms and support, unaccompanied by threats of a
malicious nature and under circumstances reasonable
and fair, although they were not to her tastes and
wishes, it would have been her duty to go there.  But
the law never guarded " bad faith " to such an extent
as to permit a husband to compel a wife to go where
he would " get her " in order to accomplish some
motive of his own.

When the husband is guilty of infidelity to the
wife, she is justified in not following him wherever
his interest or necessity may lead.  *People ex rel.
Douglass* v. *Naehr,* 1 N. Y. Crim. Rep. 513–517.

It does not seem that when matrimonial differences
arise, under facts such as in this case, the law ever
intended to compel the wife to bring either an action
for separation or divorce for her relief, when it is
apparent from the evidence that that is the very thing
the husband desires.

There would be no justice in forcing the innocent
to do what the guilty wanted, in order to relieve the
public purse.

If the complainant did not wish to sue for either
a separation or divorce and she was abandoned and
without means to support herself so that she would
have to appeal to public charity, then she could elect
her relief and invoke the statute in question.

The offers made in Police Court, through counsel
for the defendant during the hearing, were made after

the proceedings had been instituted and after the abandonment had taken place and under circumstances prejudicial to complainant's interest, and which she was not compelled then and there to accept.

Such offers were not a bar to his conviction when by his acts and the circumstances he has refused to support her. *People* v. *DuBois,* 26 N. Y. Supp. 895.

In this case the undisputed evidence is that the complainant had no money and no food on the day he ordered her to the Fifth Avenue Hotel. Neighbors supplied her with food. There was, therefore, a complete abandonment.

The complainant not being compelled to go to the place where he said he would " get her " and her furniture and food having been taken away by the defendant at the place where she did reside, there was grave danger of her becoming a burden upon the public and, therefore, she was entitled to the relief granted by the statute.

It is therefore my opinion that the judgment of conviction should be affirmed.

Judgment affirmed.