ETHELINE H. HINKLEY, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

Third Department, July 6, 1922.

Waters and watercourses — navigable waters — title to lands below high-water mark in Hudson river at Poughkeepsie cannot be acquired by riparian owner by adverse possession — Statute of Limitations — Code of Civil Procedure, § 362, now Civil Practice Act, § 31, does not apply where State asserts sovereign rights — riparian owner filling in land below high-water mark not entitled to damages where land taken by State for Barge canal terminal — appropriation proceedings instituted under agreement to test owner's right not concession of title.

A riparian owner on the Hudson river cannot acquire the title·to lands below high-water mark at Poughkeepsie by adverse possession, as the State holds the title to the bed of the river as sovereign in trust for the people.

The Statute of Limitations, Code of Civil Procedure, section 362, now Civil Practice Act, section 31, cannot apply to a proceeding in which the State is asserting its paramount sovereign rights in navigable waters.

A riparian owner who has filled in lands below high-water mark in the Hudson river at Poughkeepsie has no claim against the State for damages or for the value of construction made to reach navigable water, where said land so filled in is taken by the State for the purpose of establishing a Barge canal terminal.

The fact that the State instituted these proceedings to appropriate the land in question does not amount to a concession that the claimant has property rights therein, though said proceedings were taken in pursuance of an agreement between the State and the claimant and the city of Poughkeepsie for the very purpose of determining the rights of the claimant in said land.

APPEAL by the defendant, The State of New York, from an order and judgment of the Court of Claims in favor of the claimant, entered in the office of the clerk of said court on the 11th day of April, 1921, awarding the claimant the sum of $5,542.50.

The claimant owned a piece of land in Poughkeepsie adjacent to the Hudson river. Many years ago the owner of this upland filled in the water front to the navigable part of the river and constructed bulkheads or docks. The State had never granted to this claimant, or her predecessors in title, any rights below high-water mark. In the description in the deed to her, dated January 1, 1912, was included the filled-in lands and docks in front of her upland. The uplands owned by her and parts of the filled-in lands were occupied by buildings used for a brewery, which were removed about 1906. When the Barge canal terminal at Poughkeepsie was under consideration, the State and this claimant each asserted ownership of these filled-in lands. Claimant's title to the uplands, also to be used for the terminal, was conceded. A conference was had, attended by the State Engineer and a Deputy Attorney-General, the mayor of the city of Poughkeepsie and a representative of the claimant, to expedite the work and compose the dispute. The mayor, representing the city, desired that the terminal should be constructed at Poughkeepsie, as did the representative of the State, but the State at the time had not the funds to pay for the lands to be taken. It was agreed that the claimant's uplands, the filled-in land and certain lands adjoining, were worth the sum of $35,000; that the city should pay to the landowners $30,000, taking temporarily the claimant's uplands with other lands, which the State should later take over; and, in order to furnish a way to have determined the dispute of title of the filled-in lands, the State should take steps to appropriate them; that the claimant should file her claim for compensation, and " that the value of the right, interest and estate of the undersigned (the claimant) in and to the parcel above referred to [the filled-in lands] shall be fixed and determined by the Court of Claims of the State of New York at a sum not exceeding five thousand dollars." The agreement was carried out; the city took title to the upland, the State took proceedings to appropriate the filled-in land and claimant filed her claim. In her first claim she alleged that she was the owner in fee of the filled-in land, containing about six hundred and fifteen one-thousandths of an acre. There was no evidence to support this claim and she was permitted, under an order of the Court of Claims, to amend her claim by alleging that she had a good and sufficient title to the lands by adverse possession, and that the State was barred by the Statute of Limitations. The Court of

Claims found title in the claimant by adverse possession; that the State's cause of action to appropriate the lands without compensation has not accrued within forty years preceding the date of the appropriation; that the State has not appropriated the lands in connection with any work of improving the navigation of the Hudson river; that the appropriation by the State of these lands, coupled with its resistance to making compensation therefor, is tantamount to an action of ejectment to recover possession of the lands from claimant, and that the Statute of Limitations (Code Civ. Proc. § 362) furnishes a complete defense to an action of ejectment on the facts of the case and a complete bar to the State's defense of this claim. There was evidence that this parcel (the filled-in land) was worth $5,000. There is no other proof of value of any land or of any riparian right.

*Charles D. Newton, Attorney-General [Anson Getman, Deputy Attorney-General, of counsel], for the appellant.*

*Frank B. Lown, for the respondent.*

VAN KIRK, J.:

This controversy is between the State and a riparian owner along a navigable stream where the tide ebbs and flows in respect to her title to lands filled in in front of her uplands.

Many comments of the courts in cases to which the State was not a party (as *Matter of City of New York*, 217 N. Y. 1) and in cases arising along the Mohawk and upper Hudson rivers (as *Danes v. State of New York*, 219 id. 67) are not applicable. This riparian owner has no grant from the State and no harbor or dock line has been fixed in front of her uplands. Although the claimant's uplands have been deeded to the city of Poughkeepsie, her property rights and interests here in issue must be determined as of the time she was the owner of the uplands. The rights of either party should not be prejudiced by the acts or proceedings taken under the agreement, made between officers of the State, the mayor of the city of Poughkeepsie and the claimant, to have the existing dispute adjusted.

The Hudson river at Poughkeepsie is a public, navigable stream, where the tide ebbs and flows. The title to the Hudson river at this point below high-water mark is in the State as sovereign in trust for the people. (*Sage* v. *Mayor*, 154 N. Y. 61, 73; *Stockton* v. *Baltimore & N. Y. R. Co.*, 32 Fed. Rep. 9, 19); and it has been held in *Coxe* v. *State* (144 N. Y. 396) that this title cannot be alienated, except for a public purpose or benefit. The State, as sovereign, has the right to control and use the Husdon river and the lands thereunder for navigation and commerce and when the occasion arises may exercise it. In *Sage* v. *Mayor* (*supra*, 79) the court

said: "Although, as against individuals or the unorganized public, riparian owners have special rights to the tideway that are recognized and protected by law, as against the general public, as organized and represented by government, they have no rights that do not yield to commercial necessities, éxcept the right of pre-emption, when conferred by statute, and the right to wharfage, when protected by a grant and covenant on the part of the State, as in the *Langdon* and *Williams* cases." (*Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Williams* v. *Mayor, etc.*, 105 id. 419.) There is here no right of pre-emption and no grant.

The claimant as riparian owner has the right of access to the stream. This right means that she may not only use a skiff or canoe at the shore, but she may reach waters of the river navigable for cargo-carrying boats, and for this purpose may, without any grant or permission from the State and when no harbor or dock line is fixed, build out from the lands below high-water mark with earth, stones or timbers a dock or wharf to the navigable part of the stream. This right she has and may enjoy subject always to the superior right of the State to control and use the land and waters of the river for the people to promote or improve navigation and benefit commerce; and this right of the riparian owner must ever yield to this superior right of the State. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 id. 75; *Town of Brookhaven* v. *Smith*, 188 id. 83, 84.)

The Barge canal was constructed as a highway of commerce from the Great Lakes to the Hudson river and thence down the Hudson river to the Atlantic ocean. In perfecting this work it has been necessary to dredge the Hudson river in places and to have canal terminal points where the articles of commerce and cargoes may be loaded and discharged. The Barge canal, including its terminals, is an instrument of public navigation and commerce upon the Hudson river. The occupation and use of lands and waters of the river for a barge canal terminal is an occupation and use for the purpose of improving the navigation of the Hudson river and to regulate and benefit commerce.

Since the State holds the title to the bed of the river as sovereign in trust for the people, title thereto cannot be acquired by adverse possession. (*People* v. *Baldwin*, 197 App. Div. 285, and authorities cited, 288.) In *Saunders* v. *N. Y. C. & H. R. R. R. Co.* (*supra*, 84) Judge O'BRIEN said: " There is not, I think, any authority in this State to sustain the proposition that an adjacent owner can acquire title to lands under the waters of the Hudson river below high-water mark by filling it up, and the contention certainly has no foundation in reason or justice." The State cannot lose, by acqui-·

escence or laches, its sovereign rights. (*United States* v. *Beebe*, 127 U. S. 338, 344.) Title by adverse possession must always rest upon a claim of title under a presumed grant and upon acquiescence and laches upon the part of the owner; to institute it there must be an " ' assertion of a right so as to expose the party to an action, unless he had a grant.' " (*Burbank* v. *Fay*, 65 N. Y. 57, 65.) By exercising her right as a riparian owner she did not expose herself to an action by the State. She needed no grant to wharf out to the navigable part of the stream; no grant can then be presumed from her long exercise of her riparian right. No statute permits that title to lands as against the State may be acquired by adverse possession. The appellant invokes the Code of Civil Procedure (§ 362) and the Civil Practice Act (§ 31). These are limitation statutes which do not declare title, but renounce the right to sue. Under these acts title by adverse possession cannot be acquired; but they act as statutes of repose so that, in cases to which they apply, while title is not acquired by the occupant, the State will not sue to eject him. Section 31 of the Civil Practice Act and section 362 of the Code of Civil Procedure, so far as important here, are: " When the People will not sue. The People of the State will not sue a person for or with respect to real property, or the issues or profits thereof, by reason of the right or title of the People to the same, unless either

" 1. The cause of action accrued within forty years before the action is commenced; * * *."

This statute cannot apply to a proceeding in which the State is asserting its paramount sovereign rights in navigable waters. The State of course recognizes the right of the riparian owner to fill in his water front and build a dock or wharf to the navigable part of the stream. His doing so is no assertion of title as against the State, nor is it an invasion of any right of the State which would give it a right of action against him. Not until the occasion for improving navigation arises, and the riparian owner resists the State's demand, does a cause of action arise on the part of the State to remove or take possession of the filling-in, the dock or the wharf, which the riparian owner has constructed in front of his uplands. If, under the agreement between representatives of the State and the claimant, the proceedings that have been taken were to be considered, as the Court of Claims considered them, the equivalent of an action in ejectment on the part of the State, the State's cause of action to remove the construction placed upon her water front did not arise until it was determined by the State to improve that water front. Until such determination the riparian owner had the right to maintain such construction as she had and the State had not the right to appropriate it and use it.

The claimant has no title to the filled-in land and cannot have compensation as such. She exercised her right as the riparian owner. The filling in, the construction of a wharf to reach the navigable part of the stream, was placed by her rightfully and is her property. But it was so placed under the risk that the State might, at any time, improve the water front and remove the construction. All the buildings and structures above the surface of the soil had been removed years before this property was required by the State. The State does not seek this construction; it only seeks that of which it was the absolute owner, namely, the undisturbed bed of the stream below high-water mark and the use of the stream. It may be conceded that a riparian owner, having constructed a wharf or pier in front of his upland and the State having determined to improve the water front for the purpose of navigation, may remove and take his construction.

We hold that this riparian owner, who has no grant from the State, has no claim against the State for damages or for the value of the construction she has made to reach navigable water. (*Sage* v. *Mayor, supra,* 71, 79, 80; *Lansing* v. *Smith,* 4 Wend. 9, and other cases above cited.)

It cannot be successfully maintained that, because the State has instituted a proceeding to appropriate the land, it has conceded that the claimant has property rights. The proceeding was taken in pursuance of the agreement. Just as the claimant is entitled, therefore, to be considered as owner of the upland for the purposes of this determination, so the State is freed from any concession or admission, and the repudiation of such concession or admission is set forth in the statement of claim. If the question were here, we should have to decide that the action of officials of the State in this respect was entirely without authority and that the State is not bound by any unauthorized concessions or unlawful acts upon the part of its officers. (See *City of Mount Vernon* v. *N. Y., N. H. & H. R. R. Co.,* 232 N. Y. 309, 315, 316.)

The judgment should be reversed and the claim dismissed, with costs. We disapprove of findings of fact Nos. 6, 7, 10, 11, 12, and conclusions of law Nos. 1, 2, 3 and 4.

All concur.

Judgment reversed on law and facts and claim dismissed, with costs. The court disapproves of findings of fact 6, 7, 10, 11 and 12.