JULIAN P. FAIRCHILD and Others, as Permanent Receivers of ATLANTIC DOCK COMPANY, Plaintiffs, *v.* UNION FERRY COMPANY OF NEW YORK AND BROOKLYN, Defendant.

Supreme Court, Kings County, October, 1923.

**Lands under water — New York harbor — ferry racks — when pier owner cannot maintain action for nuisance — when old writings and book entries properly received in evidence — Laws of 1857, chap. 763, not retroactive.**

The statute (Laws of 1857, chap. 763) which requires that there should be an intervening water space between piers in New York harbor and by the terms of which no existing structure is required to be demolished, is plainly applicable only to structures erected since its passage.

A dock company incorporated under a special act of the legislature in 1840 and authorized thereby to construct bulkheads and piers built a pier in 1841, the northerly side of which is close to a line drawn at right angles from the northerly boundary of the dock company's upland where it abuts on Hamilton avenue, Brooklyn. A ferry from the foot of said Hamilton avenue to the foot of Whitehall street, Manhattan, with a ferry house, a bridge and a rack was first operated and maintained in 1846 by individuals under a franchise from the city of New York, and later was taken over by a corporation, the predecessor of the defendant herein. The ferry has been continuously operated ever since with the necessary bridge, racks, etc. In 1886 defendant's predecessor obtained from the state letters patent of land under water at the foot of Hamilton avenue, where defendant's ferry house and bridge are situated. In an action brought by the duly appointed receivers of the dock company to recover damages for the alleged unlawful maintenance by the defendant of the structures in question upon the theory that they constituted a nuisance and that plaintiffs had suffered special damage thereby, it was in proof that for a period of sixty-five or seventy years from the time the operation of the ferry was commenced, or shortly thereafter, defendant paid rent to the dock company for the use of a portion of the slip and the ferry house, bridge and rack, and that after the discontinuance of actions to recover installments of rent due under an agreement therefor the present action was instituted. It also appeared that a small portion of defendant's ferry rack, nearest to the upland, is erected upon land granted by the letters patent of 1886 and that the balance of the ferry rack is outside of the limits of that grant, and though concededly the dock company does not own the land under water upon which any part of the ferry rack, which extends into the river as far as the dock company's pier and located only a few feet therefrom, is built, plaintiffs assert the right to have the northerly side of their pier left unobstructed so that vessels may be moored there. *Held*, that the structures in question were neither a nuisance nor had they been unlawfully maintained; the defendant was, therefore, entitled to judgment, with costs, and that the greater portion of the ferry rack is upon property not owned by it was immaterial.

Whether the bringing of the actions to recover rent constituted an election of remedies which bars the maintenance of the present action need not be considered.

Under the ancient rule that a record or document more than thirty years old proven to have come from proper custody and free from any indication of fraud or invalidity proves itself, old writings and book entries were properly received in evidence over objections.

33

ACTION to recover damages for injury to real property.

*Cullen & Dykman* (*Francis L. Durk*, of counsel), for plaintiffs.

*Forster, Hotaling & Klenke* (*George P. Hotaling*, of counsel), for defendant.

CROPSEY, J. The plaintiffs are the receivers of the Atlantic Dock Company which owns a bulkhead and pier near the foot of Hamilton avenue, Brooklyn. The defendant ferry company, at the time in question, maintained a ferry from the foot of Hamilton avenue, Brooklyn, to the foot of Whitehall street, Manhattan, and in connection therewith had a ferry house, a bridge and rack. The ferry house and bridge are at the end of Hamilton avenue, and the ferry rack extends into the river as far as the dock company's pier, and is located only a few feet from it. The plaintiffs sought injunctive relief requiring the removal of the ferry rack and other structures and for damages, but before the trial, inasmuch as the city had condemned the ferry property, stipulated to withdraw the claim for injunctive relief and try merely their right to recover damages. By consent of counsel the jury was waived.

Plaintiffs' claim is based primarily upon the contention that the defendant has no right to maintain its rack in such close proximity to the side of the dock company's pier as to prevent the latter from using that side of the pier for the mooring of vessels, or for any commercial purpose. And plaintiffs' proof showed the value of the use of that side of the pier. It is a fact, established by the proof, that the dock company owns the fee of the southerly half of Hamilton avenue and that the boundary line between the property of the dock company and the property of the ferry company is the center of that avenue. A portion of the ferry house of the defendant, and its bridge and the whole of the rack in question lie south of a continuation of the center line of Hamilton avenue. But if this ownership of one-half of Hamilton avenue gives the dock company any rights, it does not aid the plaintiffs in this action. Plaintiffs here are seeking to recover damages solely for the loss of the use of the northerly side of the pier, and not for any use, or loss of use, of the bulkhead or upland. They offered no proof of any damage by reason of the latter. The sole proof of damage was confined to the pier.

The dock company was incorporated under a special act of the legislature in 1840, and was thereby authorized to construct bulkheads and piers. The pier in question was built about 1841. The right of the dock company to build and maintain it is unquestioned. The northerly side of the pier is close to a line drawn at right angles from the northerly boundary of the dock company's upland where the same abuts on Hamilton avenue.

The ferry in question was first operated in 1846. It was then maintained by individuals acting under a franchise obtained from the city of New York, and later was taken over by a corporation which was the predecessor of the defendant. It has been operated continuously ever since, with the use of the necessary bridges, racks, etc. In 1886 the defendant's predecessor obtained from the state letters patent of land under water at the foot of Hamilton avenue. A small portion of the ferry rack in question that is nearest to the upland is erected upon the land so granted, but the balance of the rack is outside and south of the limits of that grant. Concededly, the dock company does not own the land under water upon which any part of the rack is built. But plaintiffs assert the right, notwithstanding, to have the northerly side of the pier left unobstructed so that vessels may be moored there.

Since the passage of chapter 763 of the Laws of 1857 there has been legislation regulating the distances between piers in New York harbor. Section 2 of that act required that there should be an intervening water space between piers of at least 100 feet. Since that legislation the courts have held that because piers had to be at least 100 feet apart, the owner of a pier, although built on the line of his upland, had a right to have both sides of his pier unobstructed for the use of vessels. *People* v. *New York & Staten Island Ferry Co.*, 68 N. Y. 71; *New York Dock Co.* v. *Flinn-O'Rourke Co., Inc.*, 198 App. Div. 376; *Matter of Public Service Comm. (Montague Street)*, 224 N. Y. 211, 216. And, although this statute is not mentioned in the opinion, I think it must have been the basis for the decision in *Matter of McClellan*, 146 App. Div. 594; affd., upon the opinion below, 204 N. Y. 677. And under the Laws of 1860, chapter 254, section 4, a pier owner has the duty of keeping the slip on the side of his pier dredged to permit its ordinary use by commerce. *White* v. *Nassau Trust Co.*, 168 N. Y. 149. But that right of a pier owner is only such as is possessed by the public, which is a right to use the water between piers for the purposes of navigation and commerce, with the additional right in the pier owner to seek redress in court if his right be interfered with. And the whole basis of such right would be removed by a repeal of the laws that gave it life. *Matter of Public Service Comm. (Montague St.), supra.*

The present case, however, does not come within the decisions cited. Here both the pier and the ferry rack were in existence long before the statute of 1857 was enacted. At the time the rack was built there was nothing to prevent the erection of another pier in its place close to the dock company's pier. So there was no legislative prohibition against the erection of the rack at the time it

was constructed. However, it has been held that such a structure is not within the meaning of the enactment of 1857. *Stevens* v. *Rhinelander*, 5 Robt. 285. There is nothing in that act that makes it retroactive. By its terms no existing structure is required to be demolished. Plainly it is applicable only to structures erected since its passage.

The question, therefore, in this case is whether the dock company had any right at common law, and in the absence of statute, to insist that it have free access at all times to the north side of its pier. I can see no basis for such a holding, nor have I been referred to any authority that asserts such a right. The legislature may grant exclusive or limited privileges in tide waters under the power to regulate commerce, or it may restrict such uses. *People* v. *New York & Staten Island Ferry Co., supra,* at p. 78. But in the absence of such legislation a riparian owner of land bounded by navigable waters may construct a pier on the land under water in front thereof. *Town of Brookhaven* v. *Smith,* 188 N. Y. 74. And likewise in the absence of legislative requirement such pier may be of any width. The same right, in the absence of statute, is possessed by each upland owner and, therefore, adjoining owners could each build piers, and each could build his pier upon the line of his property and cover the whole width of his property if he wished. Under the plaintiffs' contention the one who built first and who built upon the line of his land, or so close to it that there would not be room for the mooring of vessels along the side of the pier and in front of his upland would obtain a right to prevent his adjoining owner from erecting a pier unless he built it far enough from the pier already constructed to permit of a sufficient space for docking vessels between them. I see no reason why, in the absence of statute, the one who builds a pier first should acquire greater rights than those who might build later. Each owner may build as and when he pleases. So long as an adjoining owner has not built so as to interfere with the use of a side of a pier already constructed, its owner may doubtless use it for mooring vessels, but he does not thereby acquire a right to insist that that open space of water shall remain. He merely has the same right as the public has and that is to use that stretch of water for the purposes of navigation. He has no right, nor has the public, to prevent the abutting upland owner from erecting a pier in front of any part of his property, and if the latter does so, the former has no claim for damages. He has not been thereby deprived of any thing in which he had a continuing right. *Jenks* v. *Miller,* 14 App. Div. 474; *Union Ferry Co.* v. *Fairchild,* 191 App. Div. 639; *Keyport Steamboat Co.* v. *Farmers Transportation Co.,* 18 N. J. Eq. 511; *Bond* v.

*Wool,* 107 N. C. 139; *Engs* v. *Peckham,* 11 R. I. 210; Gould Waters (2d ed.), §§ 153, 154; *New York Dock Co.* v. *Flinn-O'Rourke Co., Inc.,* N. Y. L. J. May 3, 1917; affd., 181 App. Div. 956.

Some of the cases relied upon by plaintiffs have already been mentioned. They do not apply as they involve consideration of the statute of 1857. The same may be said of *Appleby* v. *City of New York,* 199 App. Div. 539, where the same court which had decided *Union Ferry Co.* v. *Fairchild,* 191 App. Div. 639, held there was a distinction between that case and the *Appleby* case in that in the latter the statute was applicable. 199 App. Div. 551. Nor are the other cases upon which plaintiffs rely helpful to their claim. The facts in *Murray* v. *Sharp,* 1 Bosw. 539, are more fully stated in *Mayor, etc., of the City of New York* v. *Scott,* 1 Caines, 543, and show that the *Murray* case has no application as is pointed out in the opinion in *Union Ferry Co.* v. *Fairchild, supra,* at pp. 646, 647. The cases of *Penniman* v. *New York Balance Co.,* 13 How. Pr. 40, and *Hecker* v. *New York Balance Dock Co.,* Id. 549, concern the existence of a dry dock maintained in a slip without right or authority, which was held to be a nuisance. They did not involve any question of the rights of a pier owner to prevent the erection of another pier close to his by an adjoining owner who had authority so to do.

The ferry maintained by the defendant was operated under lawful authority. The Montgomerie charter, granted in 1730, gave the city of New York the right to establish ferries around Manhattan Island and between it and Nassau Island (now Long Island). Under this grant the city not only has the right to maintain ferries but is under the duty of so doing, the ferries being deemed a continuation of the highways. *Matter of Wheeler,* 62 Misc. Rep. 37; affd., *sub nom. People ex rel. Wheeler* v. *City of New York,* 137 App. Div. 894; *Benson* v. *Mayor, etc., of New York,* 10 Barb. 223; *Union Ferry Co.* v. *Fairchild, supra.* The fact that the greater portion of the ferry rack is upon property not owned by the defendant is immaterial as is conceded in plaintiffs' brief.

The proof shows that from the time of the commencement of the ferry's operation, or shortly thereafter, and until the year 1916, a period of sixty-five or seventy years, the ferry company yearly paid money to the dock company for the use of a portion of the slip and the ferry house, bridge and rack in question, the payment being denominated as rent. And there were written agreements providing for such payments which cover a number of the intervening years, the amount of the rent being increased from time to time. Before the present action was started the plaintiffs had brought suits against the defendant to recover installments of rent

due under such agreement. Following the decision of the Appellate Division in the first department ( *Union Ferry Co.* v. *Fairchild, supra),* ̇those actions were discontinued, and the present action instituted. In this case plaintiffs' counsel unequivocally states that he is not seeking to recover rent under the agreement made by the companies but that the action is to recover damages for the unlawful maintenance by the defendant of the structures in question. Hence the question whether defendant would be liable under the agreement is not determined. The basis of plaintiffs' claim is that defendant's structures either constituted a nuisance or were erected unlawfully, and have been especially injurious to the plaintiffs. See *Jenks* v. *Miller, supra,* at p. 482. I think it cannot be said that the structures are either a nuisance or that they have been unlawfully maintained.

This disposition of the case makes it unnecessary to consider the question whether plaintiffs in bringing their actions for rent made an election of remedy which bars them from maintaining the present action.

Upon the trial, proof was offered by the plaintiffs and received over objection. This consisted of old writings and book entries and was, I believe, properly received under the ancient document rule. This rule is that a record or document which is found to be more than thirty years of age and which is proven to have come from proper custody and is itself free from any indication of fraud or invalidity proves itself. 10 R. C. L. 1135, § 342; Chamberlayne Evidence, §§ 1103–1107, 1195; *Layton* v. *Kraft,* 111 App. Div. 842, 847; *Coleman* v. *Bruch,* 132 id. 716, 717; *Enders* v. *Sternbergh,* 1 Keyes, 264, 268; *Hamershlag* v. *Duryea,* 58 App. Div. 288; affd., 172 N. Y. 622; *Commonwealth ex rel. Ferguson* v. *Ball,* 121 Atl. Rep. 191.

The defendant is entitled to judgment, with costs. The findings should be settled upon notice.

Judgment accordingly.